[No. H006843. Sixth Dist. Mar. 4, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
SUZANNE BOYAJIAN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication except for the first two subparts of the Discussion—"Finding on Intent" and "Sentencing."

COUNSEL

Daniel Costello, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Morris Beatus and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

AGLIANO, P. J.—Defendant Suzanne Boyajian appeals from a judgment of conviction after a court trial of assault with a deadly weapon on a peace officer (Pen. Code, § 245, subd. (b)).[1] The People also alleged in the information that defendant was personally armed with a knife and that the offense was a serious felony (§§ 667, 1192.7). On appeal defendant argues the trial court erred: 1) in finding the requisite intent, 2) in failing to state reasons for selecting the midterm, and 3) in finding the present offense to be a serious felony (§§ 667, 1192.7). We shall affirm the judgment as modified for the reasons stated below.

### FACTS

On February 28, 1989, at 7:30 a.m. uniformed San Jose police officer Edward Marini was parked in an unmarked car at 428 South Market Street in San Jose. Officer Marini was using a hand-held radar device to check for

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

speeding vehicles. Marini saw appellant in the side-view mirror, approaching his car. Appellant approached the driver's side of the vehicle slowly, with her right arm behind her. When she reached the driver's door, she brought her right arm up and swung her body to the left. She had a knife in her right hand and she lunged toward Officer Marini's face. The driver's side window was open so that he could hold the radar device outside the car, which was the only way it would work.

The knife looked like a serrated steak knife with a five-inch long blade. Appellant jabbed the knife inside the open window, missing Marini's face by an inch when he jerked his head back. Marini put the car in gear, pulled up 10 feet, rolled up the window, locked the door, and called for assistance. Marini saw appellant running after his car. She made stabbing motions with the knife as she ran and continued to do so when she reached the car. She started yelling something which Marini could not hear.

Officer Pena arrived to assist. Both Marini and Pena got out of their cars and pointed their revolvers at appellant, ordering her to drop the knife. Appellant asked the officers to shoot or kill her, and then she obeyed and threw down the knife. Marini noticed later that appellant's wrist was bloody.

Officer Joseph Padgett also responded to Marini's call for help. He helped handcuff appellant. He noticed one of her wrists had been slit and he applied pressure to the wound. Padgett asked appellant what had happened. She told him that she wanted to stab Marini so that he would kill her. Based on appellant's slit wrist and her request that the officers kill her because she had sinned, Padgett believed appellant was mentally unstable. He arranged for her to be transported to a hospital psychiatric ward.

Appellant was the sole defense witness. She testified that for several days before this incident she had tried to commit suicide in various ways. She did so because she felt "separated from God." This particular morning she hoped to provoke a police officer into killing her. She drove around with the knife and finally found Marini. After she parked her car, she walked up to Marini and pushed the knife toward his face and neck. Marini jerked his head back and drove a short distance away.

Disappointed that Marini did not draw his gun and shoot her, she decided to go to Marini and tell him she was not going to hurt him, that she merely wanted him to shoot her. She walked to the police car, threw down the knife, and stretched out her arms so that Marini would run her over with the car. Then the other officers arrived. Appellant stated she did not

want to stab Marini, only to make him think she was going to do so. She did this so that he would shoot her.

## DISCUSSION

### *Finding on Intent**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### *Serious Felony Finding*

Appellant was charged with assault with a deadly weapon on a peace officer. (§ 245, subd. (b).) The District Attorney further alleged that defendant personally used a deadly weapon within the meaning of sections 667 and 1192.7. No prior serious felony pursuant to those sections was alleged. The abstract of judgment shows the trial court found true the personal use allegation. ▪ Appellant contends that the legal conclusion that she committed a serious felony must be stricken, although the factual finding of personal use may stand. At first the People conceded this point, but later they submitted a letter brief changing their position. We examine the applicable authority.

Section 667 provides a five-year sentence enhancement for a defendant who, having been previously convicted of a serious felony, suffers another such conviction. "Serious felony" is defined by subdivision (c) of section 1192.7, which includes any felony in which defendant personally used a dangerous or deadly weapon.

In *People* v. *Ybarra* (1988) 206 Cal.App.3d 546, 548 [253 Cal.Rptr. 644], the defendant sought review of the trial court's decision that his current offense of driving under the influence causing injury (Veh. Code, § 23153, subd. (a)) was a serious felony within the meaning of sections 667 and 1192.7. This court agreed that resolution of that legal issue was premature, and modified the judgment to strike that legal conclusion. (206 Cal.App.3d at pp. 549-550.) The factual finding that defendant caused serious bodily injury was allowed to stand. (*Id.* at p. 550.) The determination of whether defendant's offense qualified as a serious felony was a matter to be reserved for a future case in which the issue would be fully justiciable. (*Ibid.*)

The People rely on *People* v. *Jackson* (1985) 37 Cal.3d 826, 836, footnote 14 [210 Cal.Rptr. 623, 694 P.2d 736] which reads: "In a post-Proposition 8

---

*See footnote, *ante*, page 771.

case, for the reasons we have explained, an allegation that a burglary involved entry into a residence is not a superfluous allegation. Even if the case involved the first serious felony charge against the defendant, proof of the residential character of the burglary would expose defendant to an enhanced punishment if he committed a later serious crime. Consequently, admissions or findings that a burglary was of a residence, established on the record of the conviction, could be used in a later proceeding to prove that the defendant had previously been convicted of a serious felony."

We will follow *Jackson* and *Ybarra*. The legal conclusion that the instant offense will qualify as a serious felony in the future must be stricken, but the factual finding that defendant personally used a deadly weapon may stand.

The judgment is modified to strike the legal conclusion that the instant offense is a serious felony, and, as so modified, it is affirmed. (*People* v. *Ybarra, supra,* 206 Cal.App.3d 546, 550.)

Premo, J., and Cottle, J., concurred.